**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| SONIC AUTOMOTIVE, INC.; SONIC DIVISIONAL OPERATIONS, LLC; and ECHOPARK AUTOMOTIVE, INC. <br><br> Plaintiffs, <br><br> v. <br><br> CARVANA CO.; CARVANA, LLC; CARVANA FAC LLC; and CARVANA LOGISTICS, LLC <br><br> Defendants. | Civil Action No._____ <br><br><br> **COMPLAINT** <br> **AND DEMAND FOR JURY TRIAL** <br> **INJUNCTIVE RELIEF SOUGHT** |

Plaintiffs Sonic Automotive, Inc.; Sonic Divisional Operations, LLC; and EchoPark Automotive, Inc. (collectively, the "Plaintiffs"), by and for their complaint against Defendants Carvana Co.; Carvana, LLC; Carvana Fac LLC; and Carvana Logistics, LLC (collectively, "Defendants"), allege as follows:

## THE PARTIES

1.      Plaintiff Sonic Automotive, Inc. ("Sonic Automotive") is a company organized under the laws of Delaware with a principal office located at 4401 Colwick Road, Charlotte, North Carolina 28211. Sonic Automotive is an entity with a legal existence in good standing in its state of incorporation and has the capacity to sue.

2.      Plaintiff Sonic Divisional Operations, LLC ("Sonic Divisional") is a limited liability company organized under the laws of Nevada with a principal office located at 4401 Colwick Road, Charlotte, North Carolina 28211. Sonic Divisional is an entity with a legal existence in good standing in its state of incorporation and has the capacity to sue. Sonic Divisional is a wholly owned subsidiary of Sonic Automotive.

1

3.     Plaintiff EchoPark Automotive, Inc. ("EchoPark") is a company organized under the laws of Delaware with a principal office located at 4401 Colwick Road, Charlotte, North Carolina 28211.  EchoPark is an entity with a legal existence in good standing in its state of incorporation and has the capacity to sue.  EchoPark is a wholly owned subsidiary of Sonic Automotive.

4.     Defendant Carvana Co. is a company organized under the laws of Delaware with its registered agent located at 251 Little Falls Drive, Wilmington, Delaware 19808.   On information and belief, Defendant Carvana Co. has a principal office located at 300 E Rio Salado Pkwy Bldg. 1,Tempe, Arizona 85281.

5.     Defendant Carvana, LLC is a limited liability company organized under the laws of Arizona, with a principal office located at 300 E Rio Salado Pkwy Bldg. 1, Tempe, Arizona 85281.  Defendant Carvana, LLC is registered with the North Carolina Secretary of State as a foreign limited liability company, identifying as a registered office and mailing address 2626 Glenwood Ave Ste 550 Raleigh, North Carolina 27608.  North Carolina Secretary of State records show that Defendant Carvana, LLC was previously named "Carvana North Carolina LLC."

6.     Defendant Carvana FAC LLC is a limited liability company organized under the laws of Delaware.  On information and belief, Defendant Carvana FAC LLC has a principal office located at 300 E Rio Salado Pkwy Bldg. 1, Tempe, Arizona 85281.  Defendant Carvana FAC LLC is registered with the North Carolina Secretary of State as a foreign limited liability company, identifying as a registered office and mailing address 2626 Glenwood Ave Ste 550 Raleigh, North Carolina 27608.

7.     Defendant Carvana Logistics, LLC is a limited liability company organized under the laws of Delaware.   On information and belief, Defendant Carvana Logistics, LLC has a

principal office located at 300 E Rio Salado Pkwy Bldg. 1, Tempe, Arizona 85281. Defendant

Carvana Logistics, LLC is registered with the North Carolina Secretary of State as a foreign limited

liability company, identifying as a registered office and mailing address 2626 Glenwood Ave Ste

550 Raleigh, North Carolina 27608.

## JURISDICTION AND VENUE

8.     This is a civil action seeking injunctive relief and damages against Defendants for:

(i) infringement of federally registered trademarks in violation of § 32 of the Federal Trademark

Act of 1946, also known as the Lanham Act, codified at 15 U.S.C. § 1114, *et seq.*; (ii) unfair

competition and false designation of origin in violation of § 43(a) of the Lanham Act, codified at

15 U.S.C. § 1125(a), *et seq.*; (iii) trademark infringement in violation of North Carolina common

law; (iv) unfair competition in violation of North Carolina common law; and (v) unfair and

deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices

Act, N.C. Gen. Stat. § 75-1.1, *et seq.*.

9.     This Court has subject matter jurisdiction under 15 U.S.C. § 1121, and 28 U.S.C.

§§ 1331 and 1338(a) and (b), because this action arises under the Lanham Act. This Court has

supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367(a).

10.     This Court has personal jurisdiction over Defendants because Defendants have

substantial contacts in the Western District of North Carolina. Among other things, Defendants

operate brick and mortar locations at 3631 South Blvd, Charlotte, North Carolina 28209, 76 N

Center St., Hickory, North Carolina 28601, and at 1325 Spartanburg Hwy., Hendersonville, North

Carolina 28792. Furthermore, on information and belief, Defendants have conducted business

within this jurisdiction and District by having delivered a significant number of vehicles into this

District because a key aspect of their business focuses on quick delivery of their products directly

3

to purchasers, and Defendants operate an interactive website through which individuals residing within this District can make purchases. Accordingly, Defendants purposefully avail themselves of the benefits and protections of North Carolina law by regularly conducting business in this State and District. This Court also has personal jurisdiction over Defendants because Defendants have committed acts in this State and District that are the subjects of the claims set forth herein.

11. Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391(b) and (c) given Defendants' contacts in this District and the State of North Carolina. Defendants operate brick and mortar locations in this District and a substantial part of the events giving rise to the claims asserted occurred in this District.

### FACTUAL BACKGROUND

12. Sonic Automotive is a publicly-traded company that operates over one hundred automotive dealerships in ten states, including in North Carolina. Sonic Automotive is revolutionizing the car buying business, representing twenty-five different new car brands and is committed to providing a comfortable, hassle-free, and no-pressure car-buying experience for its customers and aims to go above and beyond the industry norm. Sonic Automotive is one of the largest automotive retailers in the country, and is most proud of its efforts to make its guests happy and make the car-buying experience as enjoyable as possible.

13. Sonic Automotive reinforces its customer-first values in many ways, including through its branding. Sonic Divisional, a wholly owned subsidiary of Sonic Automotive, owns the rights in the following marks, registered at the United States Patent and Trademark Office:

4

| Mark | Registration Date | Registration Number | Goods/Services |
|---|---|---|---|
| EVERY CAR DESERVES A HAPPY OWNER | May 19, 2015 | 4739914 (the "'914 Registration") | Class 035 automobile dealerships |
| EVERY CAR, HAPPY OWNER | June 11, 2024 | 7414778 (the "'778 Registration") | Class 035 automobile dealerships<br><br>Class 036 financial services, namely, financing the purchase of used motor vehicles, and underwriting warranty contracts for used motor vehicles |
| ECHOPARK AUTOMOTIVE EVERY CAR, HAPPY OWNER & Design<br><br> | January 9, 2024 | 7271788 (the "'788 Registration") | Class 035 automobile dealerships;<br><br>Class 036 financial services, namely, financing the purchase of used motor vehicles, and underwriting warranty contracts for used motor vehicles |

14.    Copies of the federal registration certificates for the above-referenced marks (hereinafter referred to as the "Sonic Marks") are attached hereto, respectively, as Exhibits A, B, and C, and are incorporated herein by reference.

15.    The registrations for the Sonic Marks are valid, subsisting, and in full force and effect.

16.    The '914 Registration has become incontestable under 15 U.S.C. § 1065.

17.    Sonic Automotive is an authorized licensee of the Sonic Marks and offers and sells its services through its website, which can be accessed at <www.sonicautomotive.com>.

18. EchoPark is an authorized licensee of the Sonic Marks and offers and sells its services through its website, which can be accessed at <www.echopark.com>.

19. Plaintiffs have used the Sonic Marks continuously and in good faith during all time periods relevant to Plaintiffs' claims, in connection with automobile dealerships and financing services as detailed above.

20. Plaintiffs have invested great time, effort, and resources in the development of their distinctive Sonic Marks, such that Plaintiffs' goods and services have become widely recognized by consumers as emanating from Plaintiffs and as maintaining only the highest quality and customer service standards.

21. For example, Sonic Automotive prominently displays the '914 Registration on its website, accessible at <www.sonicvipservices.com/our-culture-and-values.htm>. A reproduction of the website is shown below.



*Figure 1 Sonic Automotive Website*

6

22.    In further example, Plaintiffs use the '914 Registration across multiple social platforms, including on Instagram® (@echopark) and Facebook® (@EchoPark Automotive). Plaintiffs have even published a video advertisement available on Facebook featuring the '914 Registration with an audio overlay reciting the subject Sonic Mark. A still capture of the video is reproduced below, and the video can be accessed at:

<www.facebook.com/echoparkautomotive/videos/1105007279571001/>



*Figure 2 EchoPark Use of the '914 Registration*

23.    The '914 Registration is also prominently displayed in some of Plaintiffs' dealerships as is shown below.



*Figure 3 Plaintiffs' Use of the '914 Registration*

24.     Plaintiffs use the '778 and '788 Registrations on the EchoPark website, as shown below and available at <www.echopark.com/about-echopark>.   The website makes clear that EchoPark adopted its name in order to reinforce its customer-first values, identifying its mission as being "right there in our name:  ECHO means Every Car, Happy Owner."



*Figure 4 Plaintiffs' Use of the '778 Registration*



*Figure 5 Plaintiffs' Use of the '788 Registration*

25.     As set forth in records from web.archive.org, Sonic Automotive and EchoPark have prominently displayed the Sonic Marks on their websites or websites within their control.

26.     Accordingly, by reason of Plaintiffs' continuous use and promotion of the Sonic Marks, as well as the distinctiveness of those marks, consumers associate the Sonic Marks with Plaintiffs as the single source or sponsor of their goods and services.

27.    Defendants operate as a used car retailer for buying, selling, and trading vehicles online.  Purchasers can either request their vehicle be delivered to them or pick their vehicle up at a car "vending machine."  Carvana also provides financing services to its customers.

28.    Carvana operates a website at <carvana.com>, through which it advertises, offers, and sells vehicles.  This website also advertises Carvana's financing services.  Defendants also advertise using various media, including through social media and on television.

29.    On December 17, 2025, Plaintiffs became aware of Defendants' infringing use of the Sonic Marks.

30.    Defendant Carvana Co. facilitated or caused to be published a video, available on both Instagram® (<https://www.instagram.com/reels/DSXgFI8jgj2/>) and YouTube® (<www.youtube.com/shorts/CtwuWyi4xo4>), making unauthorized use of one or more of the Sonic Marks.  On information and belief, this video became available on December 17, 2025 at the latest.  On information and belief, Defendant Carvana Co. worked in concert and in conjunction with the other Defendants to create and publish the aforementioned videos.

31.    In the video, seven-time NASCAR Cup Series champion and spokesman for Carvana, Jimmie Johnson, proudly proclaims that ". . . every car deserves a happy driver" as text repeating the same words appears in frame.  The video ends with images of Defendants' CARVANA trade name and design, reinforcing the connection between Johnson's declaration and Defendants.  Still captures of the video are reproduced below.

10



*Figure 6 Defendants' Use of the Infringing Mark*

32.     Since December 17, 2025 at the latest, this video had been reposted at least on Instagram® by @carvanaracing.  The video is available at:

<instagram.com/carvanaracing/?hl=en>

On information and belief, this social media profile is within the control of Defendant Carvana Co.

33.     The video is meant to increase visibility and awareness of both Defendants and Johnson to consumers ahead of the Daytona 500 and invites consumers to monitor Johnson's activities, teasing a release of his Daytona 500 car paint scheme for the following day, December 18, 2025.

34.     On information and belief, each Defendant is the agent, alter ego, or under the control of the other Defendants, and each acted in concert with the others in committing the acts complained of herein. Defendants jointly develop, approve, and disseminate advertising, including the infringing video, and are jointly and severally liable for the acts alleged.

35.     Defendants' use of the slogan, EVERY CAR DESERVES A HAPPY DRIVER (the "Infringing Mark") constitutes trademark infringement and unfair competition under both the Lanham Act and at common law.  Defendants' use of the Infringing Mark further constitutes a violation of the North Carolina Unfair and Deceptive Trade Practices Act.

36.     The Infringing Mark is confusingly similar to at least the '914 and the '778 Registrations and creates the same commercial impression as the Sonic Marks.

37.     The Infringing Mark is, indeed, nearly identical to the '914 Registration.  *Compare* the '914 Registration for EVERY CAR DESERVES A HAPPY OWNER *with* Defendants' Infringing Mark, EVERY CAR DESERVES A HAPPY DRIVER.  Defendants' Infringing Mark differs from that of Plaintiffs' '914 Registration only as to the last term.

38.     The near-identical nature of Defendants' Infringing Mark to the '914 Registration can be visualized as presented below.  The underlined text designates the only difference between the two.

EVERY CAR DESERVES A HAPPY OWNER
Plaintiffs' '914 Registration

EVERY CAR DESERVES A HAPPY <u>DRIVER</u>
Defendants' Infringing Mark

39.     The Infringing Mark differs from the '778 Registration only to the extent that it substitutes DRIVER for OWNER, adds the words DESERVES A, and omits a comma.  *Compare* the '778 Registration for EVERY CAR, HAPPY OWNER *with* Defendants' Infringing Mark, EVERY CAR DESERVES A HAPPY DRIVER.

40.     The minor differences between Defendants' Infringing Mark and the '778 Registration can be visualized below using underlining and stricken-through text.

12

EVERY CAR, HAPPY OWNER
Plaintiffs' '778 Registration

EVERY CAR, ~~DESERVES A~~ HAPPY <u>DRIVER</u>
Defendants' Infringing Mark

41.     The goods and services offered and sold by Defendants under or in connection with the Infringing Mark are offered through the same or highly similar channels of trade as those used by Plaintiffs for the Sonic Marks. Both Plaintiffs and Defendants market, advertise, and offer automobile dealership and related financing services through websites, online platforms, social media, and online video platforms, including but not limited to Instagram® and YouTube®.

42.     The customers to whom Defendants direct their goods and services under or in connection with the Infringing Mark are the same as, or overlap substantially with, the customers to whom Plaintiffs direct their goods and services under or in connection with the Sonic Marks. Both Plaintiffs and Defendants target consumers seeking to buy, sell, trade, or finance vehicles, including consumers located in North Carolina and within this District.

43.     Defendants' infringing use of the Infringing Mark in online video advertising, including the Instagram® and YouTube® videos described above, occurs in the very same online and social media channels Plaintiffs use to promote and reinforce the Sonic Marks, thereby increasing the likelihood that consumers will encounter the marks in close proximity and be confused as to source, sponsorship, or affiliation.  Moreover, Defendants' use of a celebrity and well-known racing spokesperson in connection with the Infringing Mark further increases the likelihood that the aforementioned advertising will reach a high number of consumers.

44.     Defendants do not have license or permission from Plaintiffs to use the Sonic Marks or any mark confusingly similar to the Sonic Marks.

45.     Plaintiffs' rights in the Sonic Marks precede any rights Defendants could claim in the Infringing Mark.

13

46.     Because of the striking and confusing similarities between the Sonic Marks and the Infringing Mark, ordinary observers have regarded and will regard the marks as the same.

47.     The types of goods and services offered and sold by Defendants under or in connection with the Infringing Mark are identical and/or closely similar to the services Plaintiffs offer and sell under or in connection with the Sonic Marks.  For example, Defendants, like Plaintiffs, operate car dealerships:  they buy, sell, and trade vehicles.

48.     Defendants' use of the Infringing Mark in connection with automobile dealership and related financing services is likely to cause confusion, mistake, or deception among consumers as to the affiliation, connection, or association of Defendants with Plaintiffs, and as to the origin, sponsorship, or approval of Defendants' goods and services, in violation of the Lanham Act, various state laws, and common law.

49.     Consumers encountering the Infringing Mark in Defendants' advertising, including the Instagram® and YouTube® videos described herein, are likely to believe, incorrectly, that Defendants are affiliated with, sponsored by, authorized by, or otherwise connected with Plaintiffs, or that Plaintiffs have endorsed or approved Defendants' services or the advertising in which the Infringing Mark appears.

50.     The likelihood of such confusion, mistake, or deception is heightened by the fact that both Plaintiffs and Defendants operate in the same automotive retail and financing industry, provide substantially similar services, use similar marketing channels, and target the same consumers.  Defendants' use of a celebrity and well-known racing spokesperson in connection with the Infringing Mark further increases the risk that consumers will perceive some form of collaboration, sponsorship, association, license, or joint promotion between Defendants and Plaintiffs.

51.     On information and belief, Defendants adopted and used the Infringing Mark with full knowledge of Plaintiffs' Sonic Marks, and of Plaintiffs' prior and longstanding use and registration of the Sonic Marks in connection with automobile dealership and financing services.

52.     The strong similarities between the Infringing Mark and Plaintiffs' EVERY CAR DESERVES A HAPPY OWNER mark, as well as Plaintiffs' EVERY CAR, HAPPY OWNER mark, are so striking that it is unlikely to be the product of accident or coincidence.  On information and belief, Defendants deliberately selected and used the Infringing Mark in order to trade upon and benefit from the goodwill and reputation associated with the Sonic Marks.

53.     Defendants' decision to feature the Infringing Mark prominently in a professionally produced advertisement, voiced and endorsed by a well-known celebrity racing personality, evidences that the Infringing Mark was carefully chosen and approved as a central branding message for Defendants, further supporting a reasonable inference of intentional and willful infringement.

54.     Defendants' conduct constitutes willful and intentional infringement of Plaintiffs' rights in the Sonic Marks, undertaken in bad faith and with reckless disregard for, and/or willful blindness to, Plaintiffs' federally registered and common-law trademark rights.

55.     Plaintiffs are uniquely positioned to suffer harm as a result of Defendants' actions. Defendants are directly competitive with Plaintiffs.

56.     Defendants' unauthorized use of the Infringing Mark has caused and, unless enjoined by this Court, will continue to cause Plaintiffs immediate and continuing irreparable harm. Such harm includes, without limitation, loss of control over Plaintiffs' reputation and goodwill, erosion of the distinctiveness and value of the Sonic Marks, and diminution of the ability of the Sonic Marks to function as unique source identifiers for Plaintiffs' goods and services.

57.     Defendants' infringing conduct has caused, and will continue to cause, harm that is not fully compensable by monetary damages alone, including harm to customer relationships, brand equity, and Plaintiffs' carefully cultivated image of delivering a customer-first, "happy owner" car-buying experience.

58.     Unless Defendants' infringing activities are enjoined, confusion among the consuming public is likely to continue and to increase, leading consumers to mistakenly associate Defendants with Plaintiffs, to believe that Plaintiffs have endorsed Defendants' services, or to attribute any negative experiences with Defendants to Plaintiffs, thereby further damaging Plaintiffs' reputation and goodwill.

59.     Plaintiffs have no adequate remedy at law for Defendants' continuing infringement and unfair competition, and Plaintiffs are entitled to injunctive relief to prevent further irreparable injury, in addition to monetary relief as allowed by law, including Defendants' profits, Plaintiffs' damages, costs, and attorneys' fees for this exceptional case.

60.     Through counsel, Plaintiffs alerted Defendants to the infringement, requested that Defendants stop use of the Infringing Mark, and informed Defendants that any subsequent use would constitute willful trademark infringement.  Plaintiffs were ignored.  Defendants' willful and reckless activities persist.

## FIRST CLAIM FOR RELIEF
### (INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARK UNDER 15 U.S.C. § 1114, *et seq.*)

61.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

62.     Plaintiff Sonic Divisional is the owner of the Sonic Marks, including U.S. Reg. No. 4,739,914 for EVERY CAR DESERVES A HAPPY OWNER, U.S. Reg. No. 7,414,778 for

EVERY CAR, HAPPY OWNER, and U.S. Reg. No. 7,271,788 for ECHOPARK AUTOMOTIVE EVERY CAR, HAPPY OWNER & Design. Sonic Automotive and EchoPark are authorized licensees of the Sonic Marks.

63.    The registrations for the Sonic Marks are valid, subsisting, and in full force and effect. The '914 Registration has become incontestable pursuant to 15 U.S.C. § 1065 and constitutes conclusive evidence of the validity of the mark and of Sonic Divisional's exclusive right to use the mark in commerce in connection with the services identified in the registration.

64.    Plaintiffs' use of the Sonic Marks predates any use by Defendants of the Infringing Mark on which the Defendants may rely.

65.    As set forth in the preceding paragraphs, Defendants' adoption, use, display, and publication of the Infringing Mark, EVERY CAR DESERVES A HAPPY DRIVER, in connection with the advertising, offering for sale, and sale of its automobile dealership services and financing services, including through online video advertisements on Instagram®, YouTube®, and other channels, constitutes use of a reproduction, counterfeit, copy, or colorable imitation of one or more of the '914 and '778 Registrations in commerce in the United States in connection with the sale, offering for sale, distribution, and advertising of services covered by those registrations.

66.    Defendants' use of the Infringing Mark is without the consent, authorization, or license of Plaintiffs and is likely to cause confusion, mistake, or deception to the public as to the source, sponsorship, or affiliation of Defendants' goods and services as to whether Defendants' goods and services are associated with, endorsed by, or otherwise connected to Plaintiffs.

67.    Defendants' automobile dealership services and related financing services are advertised, offered for sale, and sold under the Infringing Mark are in direct competition and/or overlap with goods and services of Plaintiffs under the Sonic Marks.

68.    Defendants' automobile dealership services and related financing services are advertised, offered for sale, and sold under the Infringing Mark to the same consumers as those of Plaintiffs under the Sonic Marks.

69.    Defendants' automobile dealership services and related financing services are advertised, offered for sale, and sold under the Infringing Mark through the same channels of trade as those of Plaintiffs under the Sonic Marks.

70.    Defendants' conduct constitutes infringement of Plaintiffs' federally registered Sonic Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

71.    Defendants had constructive knowledge of Plaintiffs' federal registrations of the Sonic Marks prior to Defendants' adoption and use of the Infringing Mark.

72.    On information and belief, Defendants had actual knowledge of Plaintiffs' prior use of the Sonic Marks prior to Defendants' first use of the Infringing Mark.

73.    On information and belief, Defendants knew of Plaintiffs' prior use of the Sonic Marks and intended to induce and did induce, and intend to induce and will induce, consumers to purchase Defendants' goods and services by trading off the extensive goodwill built up by Plaintiffs in the Sonic Marks.

74.    Defendants' infringement has been and continues to be willful, deliberate, and in reckless disregard of Plaintiffs' rights, rendering this an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Plaintiffs to reasonable attorney fees, costs, and trebling of monetary remedies.  On information and belief, Defendants' acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception.

75.    As a direct and proximate result of Defendants' infringement, Plaintiffs have suffered and will continue to suffer damages, including but not limited to damage to their

18

reputation and goodwill, loss of distinctiveness of the Sonic Marks, and loss of sales and business opportunities. Plaintiffs are entitled to recover Defendants' profits, Plaintiffs' actual damages, and the costs of this action, and, due to Defendants' willful conduct, enhanced damages, and attorneys' fees pursuant to 15 U.S.C. § 1117.

76. Defendants' actions complained of herein have caused, and are causing, immediate irreparable harm that cannot be remedied by monetary damages alone, to Plaintiffs. Plaintiffs have no adequate remedy at law for Defendants' infringement of their rights.

77. Plaintiffs are further entitled to injunctive relief under 15 U.S.C. § 1116 to prevent further infringement of the Sonic Marks by Defendants.

**SECOND CLAIM FOR RELIEF**
**(FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**
**UNDER 15 U.S.C. § 1125(a), et seq.)**

78. Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

79. Plaintiffs' Sonic Marks are valid and enforceable.

80. Plaintiffs' Sonic Marks are inherently distinctive and/or have acquired distinctiveness through extensive use and promotion in connection with automobile dealership and financing services. The Sonic Marks identify Plaintiffs as the sole source or sponsor of the services offered under those marks and symbolize the goodwill associated with Plaintiffs. Plaintiffs have continuously used the Sonic Marks in commerce in the United States.

81. Plaintiffs' use of the Sonic Marks predates any use by Defendants of the Infringing Mark on which the Defendants may rely.

82. As set forth in the preceding paragraphs, Defendants' adoption, use, and display of the Infringing Mark EVERY CAR DESERVES A HAPPY DRIVER in connection with the

advertising, promotion, offering for sale, and sale of automobile dealership and financing services in interstate commerce in the United States constitutes use in commerce of a word, term, name, symbol, designation, or device, and/or a combination thereof, that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs and Plaintiffs' EVERY CAR DESERVES A HAPPY OWNER and EVERY CAR, HAPPY OWNER marks, and as to the origin, sponsorship, or approval of Defendants' goods and services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

83. Consumers encountering the Infringing Mark in Defendants' advertising, including the Instagram® and YouTube® videos described herein, are likely to believe, incorrectly, that Defendants' goods and services originate with, are sponsored, endorsed, or approved by, or are otherwise affiliated or connected with Plaintiffs, or that Plaintiffs and Defendants are engaged in a joint promotion or collaboration.

84. Defendants' use of the Infringing Mark is without the consent, authorization, or license of Plaintiffs.

85. Defendants' automobile dealership services and related financing services  are advertised, offered for sale, and sold under the Infringing Mark are in direct competition and/or overlap with goods and services of Plaintiffs under the Sonic Marks.

86. Defendants' automobile dealership services and related financing services are advertised, offered for sale, and sold under the Infringing Mark to the same consumers as those of Plaintiffs under the Sonic Marks.

87. Defendants' automobile dealership services and related financing services are advertised, offered for sale, and sold under the Infringing Mark through the same channels of trade as those of Plaintiffs under the Sonic Marks.

88.　Defendants had constructive knowledge of Plaintiffs' federal registrations of the Sonic Marks prior to Defendants' adoption and use of the Infringing Mark.

89.　On information and belief, Defendants had actual knowledge of Plaintiffs' prior use of the Sonic Marks prior to Defendants' first use of the Infringing Mark.

90.　On information and belief, Defendants knew of Plaintiffs' prior use of the Sonic Marks and intended to induce and did induce, and intend to induce and will induce, consumers to purchase Defendants' goods and services by trading off the extensive goodwill built up by Plaintiffs in the Sonic Marks.

91.　Defendants' conduct has been and continues to be willful, deliberate, and in reckless disregard of Plaintiffs' rights, rendering this an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Plaintiffs to reasonable attorney fees, costs, and trebling of monetary remedies.　On information and belief, Defendants' acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception.

92.　As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer substantial harm and damages, including but not limited to loss of control over their reputation and goodwill, dilution of the distinctiveness of the Sonic Marks, and lost sales and business opportunities. Plaintiffs are entitled to recover Defendants' profits, Plaintiffs' actual damages, and the costs of this action, and, due to Defendants' willful conduct, enhanced damages, and attorneys' fees pursuant to 15 U.S.C. § 1117.

93.　Defendants' actions complained of herein have caused, and are causing, immediate irreparable harm, that cannot be remedied by monetary damages alone, to Plaintiffs.　Plaintiffs have no adequate remedy at law for Defendants' infringement of their rights.

94.     Plaintiffs are further entitled to injunctive relief under 15 U.S.C. § 1116 to prevent further infringement of the Sonic Marks by Defendants.

**THIRD CLAIM FOR RELIEF**
**(COMMON LAW TRADEMARK INFRINGEMENT)**

95.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

96.     Plaintiffs' Sonic Marks are valid and enforceable.

97.     Plaintiffs have used the Sonic Marks continuously and in good faith in North Carolina and elsewhere in connection with automobile dealership and financing services, and the Sonic Marks have come to identify and distinguish Plaintiffs' services from those of others and to symbolize the goodwill associated with Plaintiffs.

98.     Through Plaintiffs' extensive use and promotion of the Sonic Marks, the Sonic Marks have acquired substantial goodwill and are recognized by consumers in North Carolina and elsewhere as identifying services originating from, sponsored by, or associated with Plaintiffs. Plaintiffs' Sonic Marks are inherently distinctive and/or have acquired distinctiveness through Plaintiffs' use in commerce.

99.     Plaintiffs' use of the Sonic Marks predates any use by Defendants of the Infringing Mark on which the Defendants may rely.

100.     As set forth in the preceding paragraphs, Defendants' adoption, use, and display of the Infringing Mark, EVERY CAR DESERVES A HAPPY DRIVER, in connection with the advertising, offering for sale, and sale of automobile dealership services and financing services in North Carolina and elsewhere constitutes unauthorized use of a mark confusingly similar to Plaintiffs' EVERY CAR DESERVES A HAPPY OWNER and EVERY CAR, HAPPY OWNER marks.

22

101. Defendants' use of the Infringing Mark further constitutes use of a reproduction, counterfeit, copy, or colorable imitation of one or more of the Sonic Marks in commerce in North Carolina and is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or affiliation of Defendants' goods and services, and as to whether Defendants' goods and services are sponsored or approved by or associated with or endorsed by Plaintiffs.

102. Defendants' automobile dealership services and related financing services advertised, offered for sale, and sold under the Infringing Mark are in direct competition and/or overlap with goods and services of Plaintiffs under the Sonic Marks.

103. Defendants' automobile dealership services and related financing services are advertised, offered for sale, and sold under the Infringing Mark to the same consumers as those of Plaintiffs under the Sonic Marks.

104. Defendants' automobile dealership services and related financing services are advertised, offered for sale, and sold under the Infringing Mark through the same channels of trade as those of Plaintiffs under the Sonic Marks.

105. Defendants' acts constitute trademark infringement under the common law of the State of North Carolina.

106. Defendants had constructive knowledge of Plaintiffs' federal registrations of the Sonic Marks prior to Defendants' adoption and use of the Infringing Mark.

107. On information and belief, Defendants had actual knowledge of Plaintiffs' prior use of the Sonic Marks prior to Defendants' first use of the Infringing Mark.

108. On information and belief, Defendants knew of Plaintiffs' prior use of the Sonic Marks and intended to induce and did induce, and intend to induce and will induce, consumers to

23

purchase Defendants' goods and services by trading off the extensive goodwill built up by Plaintiffs in the Sonic Marks.

109. As a direct and proximate result of Defendants' common law trademark infringement, Plaintiffs have suffered and will continue to suffer irreparable harm and damages, including harm to their reputation and goodwill and loss of sales and business opportunities, for which Plaintiffs have no adequate remedy at law.

110. Defendants' actions complained of herein have caused, and are causing, immediate irreparable harm, that cannot be remedied by monetary damages alone, to Plaintiffs. Plaintiffs have no adequate remedy at law for Defendants' infringement of their rights.

111. Plaintiffs are entitled to injunctive relief and to recover damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### (COMMON LAW UNFAIR COMPETITION)

112. Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

113. Plaintiffs' Sonic Marks are valid and enforceable.

114. Plaintiffs have used the Sonic Marks continuously and in good faith in North Carolina and elsewhere in connection with automobile dealership and financing services, and the Sonic Marks have come to identify and distinguish Plaintiffs' services from those of others and to symbolize the goodwill associated with Plaintiffs.

115. Through Plaintiffs' extensive use and promotion of the Sonic Marks, the Sonic Marks have acquired substantial goodwill and are recognized by consumers in North Carolina and elsewhere as identifying services originating from, sponsored by, or associated with Plaintiffs.

Plaintiffs' Sonic Marks are inherently distinctive and/or have acquired distinctiveness through Plaintiffs' use in commerce.

116.    Plaintiffs' use of the Sonic Marks predates any use by Defendants of the Infringing Mark on which the Defendants may rely.

117.    As set forth in the preceding paragraphs, Defendants' adoption, use, and display of the Infringing Mark, EVERY CAR DESERVES A HAPPY DRIVER, in connection with the advertising, offering for sale, and sale of automobile dealership services and financing services in North Carolina and elsewhere constitutes unauthorized use of a mark confusingly similar to Plaintiffs' EVERY CAR DESERVES A HAPPY OWNER and EVERY CAR, HAPPY OWNER marks.

118.    Defendants' use of the Infringing Mark further constitutes use of a reproduction, counterfeit, copy, or colorable imitation of one or more of the Sonic Marks in commerce in North Carolina and is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or affiliation of Defendants' goods and services, and as to whether Defendants' goods and services are sponsored or approved by or associated with or endorsed by Plaintiffs.

119.    Defendants' automobile dealership services and related financing services advertised, offered for sale, and sold under the Infringing Mark are in direct competition and/or overlap with goods and services of Plaintiffs under the Sonic Marks.

120.    Defendants' automobile dealership services and related financing services are advertised, offered for sale, and sold under the Infringing Mark to the same consumers as those of Plaintiffs under the Sonic Marks.

121.    Defendants' automobile dealership services and related financing services are advertised, offered for sale, and sold under the Infringing Mark through the same channels of trade as those of Plaintiffs under the Sonic Marks.

122.    Defendants' acts constitute unfair competition under the common law of the State of North Carolina.

123.    Defendants had constructive knowledge of Plaintiffs' federal registrations of the Sonic Marks prior to Defendants' adoption and use of the Infringing Mark.

124.    On information and belief, Defendants had actual knowledge of Plaintiffs' prior use of the Sonic Marks prior to Defendants' first use of the Infringing Mark.

125.    On information and belief, Defendants knew of Plaintiffs' prior use of the Sonic Marks and intended to induce and did induce, and intend to induce and will induce, consumers to purchase Defendants' goods and services by trading off the extensive goodwill built up by Plaintiffs in the Sonic Marks.

126.    As a direct and proximate result of Defendants' common law unfair competition, Plaintiffs have suffered and will continue to suffer irreparable harm and damages, including harm to their reputation and goodwill and loss of sales and business opportunities, for which Plaintiffs have no adequate remedy at law.

127.    Defendants' actions complained of herein have caused, and are causing, immediate irreparable harm, that cannot be remedied by monetary damages alone, to Plaintiffs.  Plaintiffs have no adequate remedy at law for Defendants' infringement of their rights.

128.    Plaintiffs are entitled to injunctive relief and to recover damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## (UNFAIR AND DECEPTIVE TRADE PRACTICES N.C. GEN. STAT. § 75-1.1, et seq.)

129.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

130.    Plaintiffs' Sonic Marks are valid and enforceable.

131.    Plaintiffs have used the Sonic Marks continuously and in good faith in North Carolina and elsewhere in connection with automobile dealership and financing services, and the Sonic Marks have come to identify and distinguish Plaintiffs' services from those of others and to symbolize the goodwill associated with Plaintiffs.

132.    Through Plaintiffs' extensive use and promotion of the Sonic Marks, the Sonic Marks have acquired substantial goodwill and are recognized by consumers in North Carolina and elsewhere as identifying services originating from, sponsored by, or associated with Plaintiffs. Plaintiffs' Sonic Marks are inherently distinctive and/or have acquired distinctiveness through Plaintiffs' use in commerce.

133.    Plaintiffs' use of the Sonic Marks predates any use by Defendants of the Infringing Mark on which the Defendants may rely.

134.    As set forth in the preceding paragraphs, Defendants' adoption, use, and display of the Infringing Mark, EVERY CAR DESERVES A HAPPY DRIVER, in connection with the advertising, offering for sale, and sale of automobile dealership services and financing services in North Carolina and elsewhere constitutes unauthorized use of a mark confusingly similar to Plaintiffs' EVERY CAR DESERVES A HAPPY OWNER and EVERY CAR, HAPPY OWNER marks.

135.    Defendants' use of the Infringing Mark further constitutes use of a reproduction, counterfeit, copy, or colorable imitation of one or more of the Sonic Marks in commerce in North

Carolina and is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or affiliation of Defendants' goods and services, and as to whether Defendants' goods and services are sponsored or approved by or associated with or endorsed by Plaintiffs.

136.    Defendants' automobile dealership services and related financing services advertised, offered for sale, and sold under the Infringing Mark are in direct competition and/or overlap with goods and services of Plaintiffs under the Sonic Marks.

137.    Defendants' automobile dealership services and related financing services are advertised, offered for sale, and sold under the Infringing Mark to the same consumers as those of Plaintiffs under the Sonic Marks.

138.    Defendants' automobile dealership services and related financing services are advertised, offered for sale, and sold under the Infringing Mark through the same channels of trade as those of Plaintiffs under the Sonic Marks.

139.    Defendants, in the course of trade and commerce, have engaged in the acts and practices described herein, including but not limited to the unauthorized use of the Infringing Mark in connection with the advertising, promotion, offering for sale, and sale of automobile dealership and financing services in North Carolina.

140.    Defendants' acts and practices, including their willful adoption and use of a mark confusingly similar to the Sonic Marks in order to trade on Plaintiffs' goodwill and to cause confusion as to the source, sponsorship, or affiliation of Defendants' services, constitute unfair methods of competition in or affecting commerce and unfair and/or deceptive acts or practices in or affecting commerce within the meaning of N.C. Gen. Stat. § 75-1.1.

141.    Defendants had constructive knowledge of Plaintiffs' federal registrations of the Sonic Marks prior to Defendants' adoption and use of the Infringing Mark.

28

142.    On information and belief, Defendants had actual knowledge of Plaintiffs' prior use of the Sonic Marks prior to Defendants' first use of the Infringing Mark.

143.    On information and belief, Defendants knew of Plaintiffs' prior use of the Sonic Marks and intended to induce and did induce, and intend to induce and will induce, consumers to purchase Defendants' goods and services by trading off the extensive goodwill built up by Plaintiffs in the Sonic Marks.

144.    As a direct and proximate result of Defendants' acts and practices, Plaintiffs have suffered and will continue to suffer irreparable harm and damages, including harm to their reputation and goodwill, loss of distinctiveness of the Sonic Marks, and loss of sales and business opportunities, for which Plaintiffs have no adequate remedy at law.

145.    Defendants' actions complained of herein have caused, and are causing, immediate irreparable harm, that cannot be remedied by monetary damages alone, to Plaintiffs.  Plaintiffs have no adequate remedy at law for Defendants' infringement of their rights.

146.    Plaintiffs are entitled to injunctive relief and to recover damages in an amount to be determined at trial.

147.    Pursuant to N.C. Gen. Stat. § 75-16, Plaintiffs are entitled to recover treble the amount of their actual damages resulting from Defendants' unfair and/or deceptive acts or practices.

148.    Defendants' conduct was willful, knowing, and in conscious disregard of Plaintiffs' rights. Accordingly, Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, and grant the following relief:

1.      A judgment that Plaintiffs are the owners and/or authorized licensees of the Sonic Marks, that the Sonic Marks are valid and protectable, and that Defendants' use of the Infringing Mark and other conduct described herein infringe Plaintiffs' rights and constitute violations of 15 U.S.C. §§ 1114 and 1125(a), common law trademark infringement and unfair competition, and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq.;

2.      A temporary, preliminary, and permanent injunction, pursuant to 15 U.S.C. § 1116, applicable state law, and such cases made and provided, enjoining Defendants, and all officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with them who receive actual notice of the injunction, from:

      a.   using the Infringing Mark, EVERY CAR DESERVES A HAPPY DRIVER, or any other mark, slogan, word, or device that is confusingly similar to the Sonic Marks, in connection with the advertising, promotion, offering for sale, or sale of any goods or services;

      b.   representing by words or conduct, or doing any other acts, that are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiffs; and

      c.   otherwise engaging in any acts of trademark infringement, false designation of origin, unfair competition, or unfair or deceptive trade practices with respect to Plaintiffs and the Sonic Marks;

3.      An order directing Defendants to remove, delete, or otherwise cease displaying all advertising, promotional materials, social media content, online videos, and any other materials bearing the Infringing Mark or any confusingly similar mark, including without limitation from any websites; social media accounts; online platforms; and other media, whether in print or online, under Defendants' control;

4.      An order directing Defendants to deliver up for destruction, or show proof of destruction, all labels, signs, prints, packages, wrappers, receptacles, advertisements, marketing materials, and other tangible items in their possession, custody, or control that bear the Infringing Mark or any confusingly similar mark, pursuant to 15 U.S.C. § 1118;

5.      An order directing Defendants to file with the Court and serve upon Plaintiffs, within a period to be designated by the Court, a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with any injunction and other relief ordered by the Court;

6.      An award to Plaintiffs of Defendants' profits attributable to Defendants' unlawful conduct, together with Plaintiffs' actual damages, in an amount to be determined at trial, and that such amounts be enhanced or trebled as permitted by 15 U.S.C. § 1117 and/or N.C. Gen. Stat. § 75-16 and any other applicable laws;

7.      A finding that this is an "exceptional case" within the meaning of 15 U.S.C. § 1117(a), and an award to Plaintiffs of their reasonable attorneys' fees and costs incurred in this action, including as permitted by 15 U.S.C. § 1117(a) and N.C. Gen. Stat. § 75-16.1;

8.      An award of pre-judgment and post-judgment interest at the maximum rate allowed by law;

9.      An award of Plaintiffs' costs of suit herein; and

10. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 18th day of December, 2025.

/s/ *Tasneem A. Dharamsi*
Tasneem A. Dharamsi (NC Bar No. 47697)
Parker Poe Adams & Bernstein LLP
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina 27601
T: (919) 835-4551
F: (919) 834-4564
Email: tasneemdharamsi@parkerpoe.com

Morgan H. Rogers (NC Bar No. 37025)
Nicholas H. Lee (NC Bar No. 47885)
Parker Poe Adams & Bernstein, LLP
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
T: (704) 335-9000
F: (704) 334-4706
Email: morganrogers@parkerpoe.com
Email: nicholaslee@parkerpoe.com

*Counsel for Plaintiffs*